Lee HENSLEE, Superintendent of Arkansas State Penitentiary, Appellant,

v.

Clarence STEWART, Jr., Appellee.

No. 17148.

United States Court of Appeals
Eighth Circuit.

Jan. 11, 1963.

Rehearing Denied Feb. 6, 1963.

Jack L. Lessenberry, Chief Asst. Atty. Gen., Little Rock, Ark., for appellant and J. Frank Holt, Atty. Gen., on the brief.

Wiley A. Branton, Pine Bluff, Ark., for appellee and Harold B. Anderson, Little Rock, Ark., on the brief.

Before VOGEL, BLACKMUN and RIDGE, Circuit Judges.

PER CURIAM.

This is an appeal by the Superintendent of the Arkansas State Penitentiary from an order [1] entered upon the amended petition of Clarence Stewart, Jr., for a writ of habeas corpus.

Stewart, a Negro then about 21 years of age, was charged, by information filed in Pulaski County, Arkansas, with the crime of murder in the first degree. He was convicted by a jury at the March 1960 term of the Circuit Court, First Division, of that county. The jury did not render a verdict of life imprisonment under Ark.Stats. § 43–2153. Stewart consequently received a death sentence. § 41–2227; Turner v. State, 1955, 224 Ark. 505, 275 S.W.2d 24, 31.

Stewart appealed his conviction to the Supreme Court of Arkansas. He argued there, inter alia, that his jury panel should have been quashed because of dis-

1. "The State of Arkansas is given seven months from June 12, 1962, to retry Stewart. If, for good cause shown, it becomes impossible or inappropriate to try him within that period of time, application may be made to this court by either Stewart or the State for a reasonable extension of time.

"If Stewart is retried, the court will enter dismissal of Stewart's present petition for release on habeas corpus. If he is not retried within the time prescribed in this Opinion, or within such other period of time as may be set by an appellate court, his petition for writ of habeas corpus will be granted.

"Pending a retrial by the State, a stay of execution will issue."

·crimination in its selection. That court, nevertheless, affirmed the judgment. Stewart v. State, 1961, 233 Ark. 458, 345 S.W.2d 472. It held specifically, p. 475 ·of 345 S.W.2d, that "the evidence fails to show a systematic inclusion of Negroes ·on jury panels which would amount to discrimination" and that it was therefore unnecessary to pass upon the argument that systematic inclusion was a denial ·of due process and equal protection of the law under the Fourteenth Amendment of the Constitution of the United .States. Certiorari was denied by the United States Supreme Court, Stewart v. State of Arkansas, 1961, 368 U.S. 935, 82 .S.Ct. 371, 7 L.Ed.2d 197, with Mr. Justice Douglas in dissent.

Stewart then filed his application for .a writ of habeas corpus with the United .States District Court for the Eastern District of Arkansas. He urged there, .among other things, that members of his race were systematically limited and discriminated against in the selection of the panel for the petit jury which convicted him and that the First Division jury ·commissioners allowed race to be considered as a factor in selecting the panel .and made no special effort to acquaint themselves with Negroes who were qualified for jury service. The district court felt that there was little significant distinction factually between the Stewart record then made before it and that in ·our Pulaski County case of Bailey v. Henslee, 8 Cir., 1961, 287 F.2d 936, cert. den. 368 U.S. 877, 82 S.Ct. 121, 7 L.Ed. 2d 78, and, with an expression of some reluctance, came to the conclusion that the jury selection procedure followed for Stewart's trial "does not measure up to the standards of the equal protection clause of the Fourteenth Amendment as interpreted by the United States Supreme Court". 206 F.Supp. 137, 141. The order now appealed from was then entered.

We emphasize initially here, as we did in Bailey, p. 939 of 287 F.2d, and as we had already done once before in an earlier appeal in that case, Bailey v. Henslee, 8 Cir., 1959, 264 F.2d 744, 746,

cert. den. 361 U.S. 945, 80 S.Ct. 408, 4 L.Ed.2d 364, that the question of Stewart's guilt is not now before us. This aspect of his problem has been discussed by the Arkansas Supreme Court in Stewart v. State, supra, pp. 473–474 of 345 S.W.2d. Here again, as was the situation in the second Bailey appeal, supra, the only issue which confronts us is whether Stewart's federal constitutional rights were preserved in the jury selection process. If they were not and if the district court's order is to be affirmed, the question of Stewart's guilt will be determined in due course at the retrial in state court upon the evidence then presented.

We also emphasize that here, as in Bailey, p. 945 of 287 F.2d, there is no question of complete exclusion of Negroes from the regular jury panels in the Pulaski County First Division for some years. The question, instead, is one directed to limitation of Negroes in the selection process.

We agree with the trial court that Bailey v. Henslee controls this case and that our conclusion there to the effect that a prima facie case of selection limitation was established and was not rebutted by the State compels Stewart's retrial here. Judge Young's detailed opinion at 206 F.Supp. 137 sets forth the factors this court stressed in Bailey and draws the manifest parallel between those factors and the jury selection features present here.

We need not repeat at length what Judge Young cogently spelled out in his opinion. It suffices to note that this record discloses, as did Bailey: (1) The absence of Negro names from the First Division's panel of alternates continuously from 1952 through the March 1960 term. (2) The presence during the same period of never more than three Negro names in any regular panel of twenty-four. (3) Repetition in the names of Negroes on the panels from 1953 to 1960. (4) The jury commissioners' carry-over of race identification to the jury lists. Specification of color on poll tax records is required by Ark.Stats. § 3–227. The

payment of a poll tax is a prerequisite for voting. § 3–104.2. Petit jurors are selected from among the electors. § 39–208.

This record of course also reveals facts which are somewhat different from the record in Bailey: (1) The presence of three Negro names on Stewart's special panel of 50, with one of these five, however, also among the three on the regular panel. (2) The absence of proof as to the racial composition of jury panels in the Second and Third Divisions which try only civil cases in the Pulaski Circuit Court. (3) The apparent immateriality here of the composition of the March 1956 First Division special panels. (4) The presence of perhaps somewhat more helpful testimony from two jury commissioners.

The Superintendent stresses:

1. The "lack of proof of the composition of the Pulaski Civil Division juries". This factor, however, was obviously no more than a minor one in Bailey for our allusion to it there was only "for what atmosphere it may provide". The district court in the present case, although mentioning it, gives the factor no great emphasis. In any event, the appellant does not deny the fact of the complete exclusion of Negro names from all panels of the Pulaski County Civil Divisions since 1939, as established in Bailey, p. 946 of 287 F.2d, and we have no hesitancy in taking judicial notice of that fact. Our conclusion would be no different were this factor absent. We note, incidentally, that the possible transfer of jurors between the civil divisions and the criminal division of the Pulaski County Circuit Court has now been terminated as of August 30, 1961. Acts 1961 (1st Ex. Sess.) No. 3, amending Ark.Stats. §§ 22–326.4 to 22–326.6, inclusive.

2. The "absence of proof of the number of poll tax sold by the Pulaski County collector with the designation 'c'". The district court, however, noted that the evidence showed that from 1953 through March 1960 three Negro names appeared on the regular panel of 24 persons on six of 15 occasions, that this ratio was never exceeded, and that none appeared in 1952. The county collector himself characterized as a guess his testimony as to the race ratio poll tax figures for 1959 which would enter into the qualification of jurors for the March 1960 term.[2] No objection to this guess testimony was noted. Its lack of substance was recognized by the district court. The important facts, however, are the evident top proportion of one in eight, its appearance 40% of the time, and its lesser status than one in six which the appellant attributes to "late reliable information" which "was superior and to be preferred".

3. The presence of five Negro names among the 50 comprising the March 1960 special panel. One of these, however, is D. B. Lacefield who also was named to the regular panel. No explanation for this repetition is offered. Lacefield's name, furthermore, is one of those the repetitious use of which was observed and questioned in Bailey, pp. 946–947 of 287 F.2d.

2. " * * * all poll tax requests coming in by mail are all written, unless otherwise designated, with a "w", because we have no way of knowing who is white and who is black, and so in order to keep from offending a white person by putting a "c" by their name or offending a colored person by putting a "w" by his name we put a "w" all the way through. The practice in my office for the last 15 years I have been employed there is that in most instances, there are some exceptions, a colored person would be less apt to be offended if there is a "w" by his name than a white person if we had a "c" by his name. So there is no accurate way of determining the poll tax or the total number or percentage issued to colored or white in one year.
* * * * *
" * * * this is a definite fact—last year the colored people bought more poll taxes than they have ever purchased in the history of Pulaski County, so, you cannot make a fair estimate of last year and the year before. They made an effort to buy more—you know that. * * * "

4. The testimony of the jury commissioners which appellant says "convey a sincere, honest, and dedicated effort to be absolutely fair and impartial in the composition of the jury". There was testimony that the commissioners used the city directory as well as the poll tax records. One of the commissioners referred to Negroes he knew personally other than those finally selected to serve on the jury. Two commissioners (of the three who served, Ark.Stats. § 39–201) testified. Portions of that testimony are set forth in the margin.[3] We note the emphasis there on proportionate representation. This concept is referred to in Bailey v. Henslee, supra, p. 942 of 287 F.2d and cases cited.

Although there are these differences, as is certainly to be expected, between this record and the Bailey record, we are forced to conclude, as did Judge Young, that the differences are not sufficient for us to reach a conclusion contrary to that reached in Bailey. There, pp. 941–945 of 287 F.2d, we reviewed in some detail the principles attendant upon constitutional jury selection. These principles have been enunciated by the Supreme Court of the United States and they bind this court. We noted four Supreme Court cases which are particularly pertinent. Norris v. State of Alabama, 1935, 294 U.S. 587, 55 S.Ct. 579, 79 L.Ed. 1074; Smith v. State of Texas, 1940, 311 U.S. 128, 61 S.Ct. 164, 85 L.Ed. 84; Avery v. State of Georgia, 1953, 345 U.S. 559, 73 S.Ct. 891, 97 L.Ed. 1244; Eubanks v. State of Louisiana, 1958, 356 U.S. 584, 78 S.Ct. 970, 2 L.Ed.2d 991. We noted,

3. Commissioner Edward Granoff:

"I seek to select persons who would make good jurors * * * We tried to get the better type of people—we tried to get the ones we knew something about. * * * We tried to select the people that would be the best qualified and we spent quite a bit of time on selecting the jury. There was no special investigation.

"Q. As one of the jury commissioners, Mr. Granoff, was it not the intention and plan of the jury commissioners to select three negroes so as to give the negroes their proportionate representation?

"A. We wanted to have some on there so they would have a say in the government of our county.

"Q. You wanted to give them a proportionate part?

"A. Sure.

"Q. You knew that the regular jury panel might be used to try some negroes and you thought it would be fair to have three negroes on the regular panel, is that correct?

"A. That's right, not only in trying negroes but to use them in trying white people too.

"Q. You wanted them to have proportionate representation?

"A. That's right.

* * * * *

"Q. Are you a member of some church?

"A. Yes, two.

"Q. Which church?

"A. The First Lutheran and the Jewish Temple up here. I belong to the minority group too, so I don't pick on any of them."

* * * * *

Commissioner Jack L. Branch:

"Q. Mr. Branch, you heard Mr. Granoff testify?

"A. That's right.

"Q. As one of the Jury Commissioners, you, too, thought that the negroes should have representation on the jury?

"A. That's right.

"Q. And in thinking that, you sought to give them three negroes on the regular panel?

"A. Three or six. We worked from 10:00 o'clock in the morning until 5:00.

"Q. On the regular panel you picked three?

"A. That's right.

"Q. In proportion to their proportionate part of the poll tax holders of this county, do you substantially agree with Mr. Granoff's testimony?

"A. Yes, I do.

* * * * *

"Q. Mr. Branch, the question was asked if you apportioned the negroes that were placed on the regular panel and I took it from Mr. Granoff's testimony that you all didn't have any figures and you don't know what the proportion would be?

"A. We picked enough so they would represent the county government.

"Q. You wanted to put some negroes on the jury and you checked the poll book and you ended up with three?

"A. I know we worked from 10:00 o'clock to 6:00.

"Q. You all made a special effort to see that there were some negroes on there?

"A. That's right."

too, p. 943 of 287 F.2d, that the Supreme Court of Arkansas has frequently referred to and followed these principles in opinions both affirming and reversing state criminal convictions. We then observed, citing Supreme Court cases, that

"Although the question whether racial discrimination exists has been said to be a question of fact, this does not relieve a federal court of the duty to make independent inquiry and to determine whether a federal right has been denied."

■ With these principles in mind we conclude on the record before us, as we did on the Bailey record, p. 947 of 287 F.2d:

"The foregoing facts, taken in the aggregate, lead us to the conclusion that a prima facie case of limitation of members of the Negro race in the selection of this defendant's petit jury panel was established, [and] that the State did not rebut it * * *. Here there appears to be a definite pattern of race selection; here there is a device for race identification with its possibility of abuse; here there is exclusion from the alternate panels * * *; here there is an element of recurrence of the same Negro names; and here there is the additional factor, for what atmosphere it may provide, of exclusion from the civil divisions' panels."

This court, after the appeal had been perfected, and upon the Superintendent's application, granted the State of Arkansas time to April 12, 1963, in which to retry Stewart. Hunter Douglas Corp. v. Lando Products, Inc., 9 Cir., 1956, 235 F.2d 631, 632–633. It is possible that the appellant will seek review of our judgment by a petition for certiorari to the United States Supreme Court. We assume that if any such application is made it will be effected prior to the issuance of our mandate or that a stay of mandate will be sought as is contemplated by our Rule 16(c). If this is done, any complication such as that presented in Bailey v. Henslee, 8 Cir., 309 F.2d 840, will be avoided. Accordingly, the Superintendent and the State are now granted still further time in which to retry Stewart to and including the expiration of one hundred twenty (120) days from the date of the filing of this court's mandate with the United States District Court for the Eastern District of Arkansas. If this amount of time is deemed then to be unreasonably short, any application by either party for additional time will be directed to the district court.

Affirmed.