STEWART *v.* STATE.

5102                                            375 S. W. 2d 804

Opinion delivered March 2, 1964.
[Rehearing denied March 30, 1964.]

*Harold B. Anderson* and *Edward V. Trimble,* for appellant.

*Bruce Bennett,* Attorney General, *By Beryl Anthony, Jr.,* Asst. Atty. Gen., for appellee.

PAUL WARD, Associate Justice. Appellant, Clarence Stewart, Jr., was charged with the crime of murder in the first degree in the perpetration of burglary against William N. Caldwell on January 8, 1959. He was tried in Pulaski County, found guilty as charged, and sentenced to die by electrocution. On appeal to this Court the judgment was affirmed on April 17, 1961. See *Stewart* v. *State,* 233 Ark. 458, 345 S. W. 2d 472. Certiorari to the United States Supreme Court was denied on December 4, 1961. See *Stewart* v. *State of Arkansas,* 368 U. S. 935, 82 S. Ct. 371, 7 L. Ed. 2d 197. Following that, appellant,

on February 5, 1962, filed a petition in the United States District Court for the Eastern District of Arkansas, Western Division, for a writ of habeas corpus. On the same date an order was issued by that court to the Superintendent of the Arkansas State Penitentiary requiring him to show cause why the writ should not be granted.

The ensuing trial resulted in the decision found in *Clarence Stewart, Jr.* v. *Lee Henslee, Superintendent of Arkansas State Penitentiary,* (decided June 12, 1962) 206 F. Supp. 137. In that opinion the court, after noting that the question of petitioner's guilt was not an issue, said:

"We come, then to the question of whether members of petitioner's race were deliberately and intentionally limited in the selection of petit jury panels." [Meaning, of course, in the state court.]

The District Court then proceeded to compare nine separate sets of facts and circumstances to the same number of somewhat similar sets of facts set forth in the case of *Luther Bailey* v. *Lee Henslee, Superintendent of the Arkansas State Penitentiary,* 287 F. 2d 936. The Judge then concluded:

"I have come reluctantly to the conclusion, however, that the differences between this record and Bailey are not sufficient to avoid the same result reached in Bailey, that is, a determination that the procedure followed in Stewart's trial in the method of jury selection does not measure up to the standards of the equal protection clause of the Fourteenth Amendment as interpreted by the United States Supreme Court."

The above decision was appealed by Henslee to the United States Court of Appeals, Eighth Circuit, where it was affirmed on January 11, 1963. See: *Lee Henslee, Superintendent of Arkansas State Penitentiary* v. *Clarence Stewart, Jr.,* 311 F. 2d 691 (1963). In affirming the District Court the Circuit Court of Appeals, in substance, found:

(a). There are four instances tending to show discrimination in this case and in the *Bailey* case. These are:

1. Absence of Negro names from the panel of alternates from 1952 to 1960.

2. During said period there were never more than 3 Negro names on any regular panel of 24.

3. Repetition of Negro names on the panels from 1953 to 1960.

4. Race identification on poll list from which jurors were selected.

(b). There are also four instances which indicate less discrimination in this case than was shown in the *Bailey* case. These related to the following:

1. Here there were 3 Negro names on the special panel of jurors.

2. Here there was no proof of discrimination in the Second and Third Divisions which try only civil cases.

3. Here there was no apparent partiality shown in the composition of the special panel.

4. Here there was more helpful testimony from two jury commissioners.

The Court then concluded (as in the *Bailey* case):

" 'The foregoing facts, taken in the aggregate, lead us to the conclusion that a prima facie case of limitation of members of the Negro race in the selection of this defendant's petit jury panel was established, [and] that the State did not rebut it * * *.' "

The Court then gave the State of Arkansas 120 days (with the right to apply for additional time) to retry appellant.

In due time a trial was had in the Pulaski County Circuit Court, First Division, appellant was again found guilty, and again sentenced to die by electrocution.

On this the second appeal to this Court the sufficiency of the evidence is not questioned, so we proceed first to discuss the three principal points raised by appellant—

*One.* Discrimination in selection of the jury; *Two.* Discrimination in selecting the jury commissioners; and; *Three.* The Confession.

*One.* It is here once more insisted by appellant that ''Members of petitioner's race were intentionally, deliberately, and systematically limited in the selection of petit jury panels''. We have purposely set out in some detail the method by which the Federal District and Circuit Courts concluded, by comparison with the *Bailey* case, that in the first trial there was evidence of discrimination to the extent that appellant was denied his rights under the Fourteenth Amendment to the United States Constitution. It is of course understandable why the District and Circuit Courts did not attempt to lay down any single, simple rule to guide us here. We recognize, as did they, that the problem does not lend itself to a solution of this type. The result is that we are left to consider the facts ''taken in the aggregate'' and decide whether the Negro race has been discriminated against in the selection of the jury in this particular case. It is our conclusion that no such discrimination is revealed by the record before us.

The only testimony touching the question of discrimination was given by two jury commissioners who selected the names placed on the jury panel. Under oath they stated that race had nothing to do with selecting the jurors. In the absence of any attack on their credibility, we feel that we must take the position that they told the truth. It is in order then to examine the record to see if it contains any facts or circumstances which indicate the testimony of the jury commissioners should be discredited. Several such facts and circumstances were relied on in the *Stewart* opinion [311 F. 2d 691] and by appellant here to indicate discrimination.

We now examine some of them, for possible bearing on this case.

(a) From 1952 to 1960 there were no Negroes' names on the alternate panels and only three names (at any one time) on the regular panel. It is our opinion

that any implication or prejudice or discrimination deducible from the above facts is overcome by the fact that here eleven Negroes were chosen. Otherwise it is hard to see how the implication can ever be overcome.

(b) Here, as in the first *Stewart* case, the poll tax books indicated race, but here the undisputed testimony shows race designation was not used for the purpose of discrimination, and the number of Negroes selected supports that testimony.

(c) It is argued by appellant that the jury commissioners made no effort to acquaint themselves with members of the Negro race, which fact tends to indicate discrimination. Here, the jury commissioners said they knew "a large number of Negroes". This, in our opinion, is sufficient to dispel any implication of discrimination.

(d) Although it was said in the *Bailey* case, *supra,* that proportional race representation on juries was not required, appellant argues that systematic and continued selection of less than a proportionate representation of the Negro race shows discrimination. The implication being, of course, that such discrimination has been shown in this case. We do not agree. Any such implication based on past history is overcome by the undisputed testimony here—that is, the Negro race was proportionally represented. Even though such representation is not required, it does show the Negro race was not discriminated against in this case.

The burden was on appellant to prove discrimination in selecting the jury. See *Tarrance* v. *Florida,* 188 U. S. 519, 23 S. Ct. 402, 47 L. Ed. 572, and *Akins* v. *Texas,* 325 U. S. 398, 65 S. Ct. 1276, 89 L. Ed. 1692. In view of all we have heretofore said we hold appellant has not discharged that burden in this case.

*Two.* We see no merit in appellant's contention that his rights under the Fourteenth Amendment to the United States Constitution have been denied in that Negroes have been excluded from being jury commis-

sioners for the past fifty years. The question presented here is whether the jury panels, and not the jury commissioners, have been properly chosen. We are unwilling to accept the fatalistic concept urged by appellant which leaves no room for change and improvement. If the present is wholly dependent on the past, then there is no hope for the future. In the case of *Moore* v. *Henslee,* 276 F. 2d 876, this contention was fully and ably explored and found to be without merit—the Court saying it was not supported by either "precedent or logic".

*Three.* It is here contended appellant's confession was made without benefit of counsel and that it was coerced and involuntary. We are likewise unable to see any merit in this contention under the undisputed testimony. Appellant's confession was not made in open court, but was made to police officers soon after the crime was committed. The appropriate statute in this situation is Ark. Stat. Ann. § 43-2115 (1947), which reads:

"A confession of a defendant, unless made in open court, will not warrant a conviction, unless accompanied with other proof that such an offense was committed."

In *Ezell* v. *State,* 217 Ark. 94, 229 S. W. 2d 32, the above section was interpreted to mean an extrajudicial confession of the defendant must be corroborated by proof of the *corpus delicti.* In *Mouser* v. *State,* 215 Ark. 131, 219 S. W. 2d 611, we held that a confession obtained outside of court along with further proof that the crime was actually committed will sustain a conviction. In the case before us there is abundant and uncontradicted proof to corroborate appellant's confession of guilt. Appellant admitted possession of the knife which was found at the body of the victim, and he led the officers to the areas where they found numerous articles, located at different places, which were taken from the victim. See: *Boone* v. *State,* 230 Ark. 821, 327 S. W. 2d 87, and *Hargett* v. *State,* 235 Ark. 189, 357 S. W. 2d 533.

The record, likewise, does not support appellant's contention "that his alleged confession was coerced and involuntary. . . ." There is no testimony that appellant

was in any way abused or threatened. On the other hand, the officers positively stated no force or threats were used. It further appears that the prosecuting attorney advised appellant that what he said might be used against him, and also advised him of his rights to refuse to talk and to be represented by counsel.

*Other Points Raised.* In addition to the principal points relied on by appellant, other points and issues were raised in the motion for a new trial and discussed in the brief. We have carefully considered each and every one of the points and issues and find no reversible error in any of them. We deem it sufficient to make brief mention of some of them.

Appellant asked for a continuance because of lack of time to prepare for trial. On the showing made, we think the trial court was justified in refusing the continuance on the ground that the evidence would be similar to that of the former trial, that one defense attorney was in both trials, that the time allowed for trial was limited, and that appellant had been in the State Hospital thirty days (for observation) during which time his attorneys could have conferred with him. We have consistently held that the matter of granting or denying a continuance in criminal cases rests in the sound discretion of the trial court. *Thompson* v. *State,* 26 Ark. 323; *Jackson* v. *State,* 54 Ark. 243, 15 S. W. 607; *Sullivan* v. *State,* 109 Ark. 407, 160 S. W. 239; and *Leach* v. *State,* 229 Ark. 802, 318 S. W. 2d 617.

We find no error in the trial court's permitting the introduction of certain photographs since the court explained they were introduced only to show the surroundings of the scene of the murder. This, also, was a matter resting in the sound discretion of the court. *Oliver* v. *State,* 225 Ark. 809, 286 S. W. 2d 17.

A police officer was permitted to state that a stain on the victim's coat appeared to be blood, and the admittance of this testimony is assigned as reversible error. We do not agree, even though the witness was not an

expert on such matters. See *Richardson and Shoop* v. *State,* 221 Ark. 567, 254 S. W. 2d 448.

Finding no reversible error, we conclude the judgment of the trial court should be, and it is hereby, affirmed.

Affirmed.

Holt, J., not participating.