JOHNSON v. STATE.

5098

377 S. W. 2d 865

Opinion delivered April 20, 1964.

[Rehearing denied May 18, 1964.]

16

*Edward V. Trimble, Charles E. Scales,* for appellant.

*Bruce Bennett,* Attorney General, by *Richard B. Adkisson,* Asst. Attorney General, for appellee.

JIM JOHNSON, Associate Justice. This appeal arises from a conviction of murder in the first degree. On February 8, 1963, Jerry James Johnson was charged by information filed in the Pulaski Circuit Court. The information alleged that appellant murdered Aliene Arrington on July 31, 1962, with malice aforethought, deliberation and premeditation in the perpetration of the crime of robbery by stabbing her with a knife. After the bench warrant issued thereon was returned, the court ordered appellant to the State Hospital for observation, where he was found to be without psychosis. Thereafter on May 6, 1963, the court appointed counsel for appellant, his not guilty plea was entered and the case was set

for jury trial on May 27, 1963. On the third day of trial, after testimony of State's and appellant's witnesses, instructions of the court and argument of counsel, the jury returned a verdict finding appellant guilty of murder in the first degree. On July 8, 1963, appellant was sentenced to death by electrocution. On July 19, 1963, after hearing, appellant's motion for a new trial was denied. This appeal followed.

For reversal appellant primarily argues three points: (1) members of appellant's race were intentionally, deliberately and systematically limited in the selection of petit jury panels; (2) that appellant has been denied his rights under the Fourteenth Amendment of the United States Constitution in that Negroes have been excluded from being jury commissioners for the past fifty years; and (3) that appellant's confession was coerced and involuntary and his motion to suppress the confession and the evidence should have been granted.

This was a particularly abhorrent crime. The decedent, a lady in her fifties, owned and ran a small neighborhood grocery in Rixey, a community between North Little Rock and Jacksonville. One mid-summer afternoon she was found in the store by her aged mother, hands and feet tied, dead. She had suffered about twenty stab wounds. Some months later, early in February, 1963, while in jail on another charge appellant asked to talk to the jailer and when he did so, confessed verbally to killing Mrs. Arrington. According to the testimony of several of the officers, appellant repeated his story to several deputy sheriffs and the sheriff. Appellant took officers to the store, showed them the scene and the route he walked, then took them to talk to a man from whom he borrowed a pocket knife the morning of the killing, told them of throwing away his gloves, burning his clothes and hiding some of the stolen money in a flashlight. Appellant related that when his mother asked where his clothes were that evening, he told her they were out on the clothes line, then took similar ones outside and dirtied them, telling his mother that a dog had dragged them off the line; also that his step-father

that evening (the night of the murder) asked for the pocket knife appellant had borrowed to return to its owner. At trial appellant denied having committed the offense and testified that he confessed to the crime on a dare and in a desire for publicity. Testimony of appellant's and State's witnesses, however, neatly corroborated the confession appellant made to the sheriff and his deputies. For instance, appellant's step-father testified that appellant went to work with him the morning of the killing unloading slabs, borrowed a pocket knife, left work about eleven o'clock, and that when appellant came home that night he was asked where the clothes were that he had worn earlier and the step-father asked for the knife to return it to his co-worker. The co-worker testified about the loan of the knife, that he had asked the step-father to return it to him and that the step-father had done so the following day, and that the co-worker had so stated to the sheriff's deputies at the request of and in the presence of appellant during the sheriff's investigation of appellant's story. Appellant had explained how and where he committed the crime in considerable detail, saying that he decided to kill decedent so that she could not identify him if the police showed her the pictures of him they had. According to the testimony of the officers, appellant said he had his arm around the lady's neck while she was trying to call for someone, he picked up a butcher knife and stabbed her once. The knife bent, so he tied her up with string, went to the front of the store where he had dropped the pocket knife, then went back and stabbed her a number of times. All in all, review of the testimony impels a finding that there was substantial evidence to support the verdict of the jury.

The arguments, citations and facts of this appeal are remarkably similar to *Stewart* v. *State,* 237 Ark. 748, 375 S. W. 2d 804.

We shall consider appellant's last point for reversal first, that is, that appellant's confession was coerced and involuntary and his motion to suppress the confession and the evidence should have been granted. We find

no objection on this point in the trial record. Even if there had been such an objection, the testimony of the officers in the case at bar, along with competent proof of the commission of this crime, would have been admissible. *Norton* v. *State,* 237 Ark. 783, 376 S. W. 2d 267. Moreover, appellant admitted at trial that he had made such statements to the officers and confessed to other crimes as well. We consider this point, therefore, to be without merit.

Appellant next argues that members of appellant's race were intentionally, deliberately and systematically limited in the selection of petit jury panels. After selection of the jury, appellant in chambers moved to quash the entire panel on the grounds that ''the jury commissioners of Pulaski County have allowed race to be a factor in its determination of qualified jurors, that the jury commissioners have not made any specific attempt to acquaint themselves with qualified Negro electors in this county, and that the proportion of Negroes that are called on the regular and special panels is less than the proportionate number of qualified Negro voters in this county.'' The court then asked if appellant wanted to introduce any proof in support of this motion. Appellant did not. Several weeks after the trial, appellant renewed this motion and was allowed by the court to present testimony in support of the motion, following which the motion was denied. Review of the testimony offered in support of the motion does not convince us that the jury commissioners failed to observe the standards against discrimination in jury selection set down by the United States courts. However it is not necessary for us to determine this. Appellant was offered the opportunity to present testimony in support of his motion prior to the jury's being sworn to try the case, at which time appellant by statute had the right to examine the jurors under oath as well as other witnesses whose attendance could be coerced (such as the jury commissioners). Ark. Stat. Ann. §§ 43-1901—43-1929 (1947). Having failed to do so at the appropriate time, it is beyond our province to legislate such new procedure as would permit an

accused to find fault with a jury or a jury panel long after an unsatisfactory verdict.

Appellant's third point urged for reversal is that appellant has been denied his rights under the Fourteenth Amendment of the United State Constitution in that Negroes have been excluded from being jury commissioners for the past fifty years. This precise point was raised in *Moore* v. *Henslee,* 276 F. 2d 876. In its per curiam opinion, the Eighth Circuit Court of Appeals said this:

"The focal point of appellant's contention, as advanced in their brief and in oral argument, is that discrimination in the selection of jury panels in Miller County, Arkansas, is necessarily practiced because the Negro race is not represented on the jury commission which is composed of three citizens. It is suggested that 'it is almost impossible' for an all-white jury commission to keep informed of the habits and qualifications of the Negro population so that eligible members of that race can be selected for jury duty. We are not persuaded by this novel argument which fails to find support in either precedent or logic. Adoption of the principle contended for would require indulgence in the unwarranted presumption that jury commissioners entirely of one race will not discharge their 'duty to familiarize themselves fairly with the qualifications of the eligible jurors of the county without regard to race and color.' *Cassell* v. *State of Texas,* 339 U. S. 289, 70 S. Ct. at page 633. Moreover, we are satisfied that the theory advanced by appellants would in reality lead to complexities in the administration of an important facet of our system of trial by juries. Application of the principle contended for, could not, in our view, be limited to the white and negro races. It would encompass all races, and the numerous nationalities and religious denominations existent in this country. The words of Mr. Justice Reed, speaking for the Court in *Akins* v. *State of Texas,* 325 U. S. 398, at page 403, 65 S. Ct. 1276, at page 1279, seem to be peculiarly appropriate:

" 'The number of our races and nationalities stands in the way of evolution of such a conception of due process or equal protection. Defendants under our criminal statutes are not entitled to demand representation of their racial inheritance upon juries before whom they are tried. But such defendants are entitled to require that those who are trusted with jury selection shall not pursue a course of conduct which results in discrimination 'in the selection of jurors on racial grounds.' (Emphasis supplied.)''

We can add nothing to the eloquence or the reasoning of the Court of Appeals, and therefore find no merit in appellant's contention on this point.

As is our wont in this type of criminal appeal, we have examined and reviewed every objection in the record and find no error. The judgment of the trial court is therefore affirmed.