JIM JOHNSON AND MAURICE SANFORD v.
STATE OF ARKANSAS

5499 463 S. W. 2d 400

Opinion delivered February 8, 1971

[Rehearing denied March 15, 1971.]

*E. V. Trimble,* for appellants.

*Joe Purcell,* Attorney General; *Mike Wilson,* Asst. Atty. Gen., for appellee.

J. FRED JONES, Justice. Jim Johnson and Maurice Sanford, two young Negro males 19 and 17 years of age respectively, were convicted of first degree rape in the St. Francis County Circuit Court and were sentenced to life imprisonment. Through an attorney, other than the one who represented them at the trial, they appeal to this court in *forma pauperis.* The sufficiency of the evidence to sustain the convictions is not questioned on this appeal so the sordid details will not be set out.

The points on which the appellants rely for reversal are stated as follows:

"1. Members of petitioners' race were intentionally deliberately and systematically limited in the selection of petit jury panels.

2. Petitioners are Negroes and members of their race were deliberately and intentionally discriminated against in the selection of petit jury panels.

3. Jury commissioners allowed race to be considered as a factor in the selection of the petit jury panels.

4. The jury commissioners made no special effort to acquaint themselves with Negroes who were qualified for jury service."

The appellants' brief simply contains mimeographed copies of 23 pages of the pleadings, motions and orders, and one page designated "Brief and Argument." Aside from the mere citations of 11 federal cases, including *Jackson* v. *Denno,* 378 U. S. 368, 12 L. Ed. 2d 908, and *Escobedo* v. *Illinois,* 378 U. S. 478, the appellants' entire brief and argument is as follows:

"It is the contention of the appellants that their case should have been transferred to some other judicial district because of the race riot that was taken place in Forrest City, Arkansas, on and during the date of August 23, 1969, and is further contention that the Honorable Elmo Taylor, Circuit Judge of said district should have taken judicial knowledge of the conditions then existing in Forrest City and should have on its own motion granted a change of venue.

The Eighth Circuit of Appeals has found in the previous case of *Stewart* v. *State of Arkansas,* that members of the Negro race were deliberately and intentionally limited and excluded in the selection of petit jurors for the Circuit Court in violation of the Federal Constitution. It is the opinion of the petitioners that the same factual findings in *Stewart* v. *State* are identical with those in this case.

The following cases are in point: [list of 11 federal court decisions].

It is the defendants' contention that they were denied their Constitutional Rights to a fair and impartial trial when the State denied them a change of venue and a right to a fair proportion of black jurors."

No motion for a change of venue is shown in the record and the appellants have totally failed to sustain their burden of demonstrating error on the assignments they allege.

Mrs. Dorothy C. Barnard, the county and probate clerk of St. Francis County, was called by the appellants as a witness on their motion to quash the jury panel. She testified that she had served as county and probate court clerk for nine years; that she has charge of the registration of voters in St. Francis County; that the voter registration act makes no provision for designation of race, and that no such designation is made in her office. She testified that there is no way of knowing what percentage of white and black people are registered to vote, but that she would guess it to be close to 50-

50. She testified that she believes the number of registered voters in St. Francis County on January 1, 1969, was 13,133.

Cecil McFall, the circuit clerk of St. Francis County, testified that he is past 60 years of age and has lived in St. Francis County all his life; that as circuit clerk of St. Francis County he has charge of the jury list and the calling of the jury when the court is in session; that for the October, 1969, term of circuit court there were 36 jurors on the regular panel and that eight of them were black. He testified that one of the Negro members failed to appear in answer to summons. He testified that by looking at the special panel list of jurors selected prior to the present panel, he could not say how many were white and how many were black.

It was stipulated between the prosecuting attorney and the attorney for the appellants that statistical records as to jury composition which had ben accepted and used in evidence by stipulation in some other recent criminal cases in the St. Francis Circuit and federal court, could be made a part of the record in the case at bar, but these statistics do not appear in the record before us.

The following colloquy between the attorneys and the court, which does appear in the record, may partially explain the absence from this record of the statistical material referred to:

"MR. LONG: In addition to having the numbers on the panel, the numbers of black and white people on the panel, we had a piece of paper on each man to show whether or not he was college-educated, what his occupation was, how much money he made, how old he was, to see if the panel did represent a cross-section of the community.

THE COURT: The motions in those cases were very similar to the one that is made in this case.

MR. BUTLER, and the Court overruled, this Court did, overruled those motions. This Court, of course, for the purpose of this motion, can take judicial knowledge of its own acts, and this Court remem-

bered having instructed this jury commission that selected this panel to absolutely disregard race, creed, or color, and to not put anybody on the jury panels because they were a certain color, or because they were of a certain religion, or sect, because they were affiliated with a certain political party, but for them to be very careful in the selection of the people they selected, in that we wanted people who were capable of making good jurors, and that is all we were interested in. We were not interested in their station in life, whether or not they were employer or employee, whether or not they were farmer or merchant, or any of those things, and that they were to absolutely disregard all of them, and on that basis, and on the theory which this Court believes to be the law, that it is not necessary that each ethnic group in America be represented on the juries on a proportionate basis. The Court overruled those motions, and the action of this Court was, I would say, confirmed, because the holding of the Federal Court at the hearing on the same motion, on the same evidence, was that the jury was constitutionally composed, and that should do it.

MR. BUTLER: I would like to make it clear that, with permission from the Court, we can put into the record, which we do not have here today, but we can put in the record the statistics that were stipulated to between the Prosecuting Attorney and Mr. Lavey and Kaplin in regard to the proportion of the races, and the economic conditions, et cetera, of jurors of this panel in the hearing before Judge Oren Harris.

MR. HENRY: We stipulate to that."

It would appear that the defendants waived their right to include in the record here, the statistical data on jury selection that had been stipulated as accurate and presented in evidence on motion to quash the jury panel in other cases in which the courts found that the jury was constitutionally selected and composed.

The *voir dire* examination of the jurors who sat

in the trial of the appellants does not appear in the record, but apparently, after the jury was selected, the appellants' attorney orally renewed his motion to quash the panel because the prosecuting attorney had methodically exercised peremptory challenges in the removal of Negroes from the jury. The prosecuting attorney responded to the motion as follows:

"Your Honor, the prosecution has not exercised any of its challenges purely on race. We have challenged three Negroes and four white people, and the challenges were not based on race."

The appellants say that the same factual findings in the Eighth Circuit Court of Appeals in "Stewart v. State of Arkansas" are identical with those in the case at bar. We assume that the appellants refer to Henslee v. Stewart, 311 F. 2d 691. That case arose from Pulaski County and the Eighth Circuit Court of Appeals affirmed the district court in holding that "a prima facie case of limitation on members of the Negro race in the selection of this defendant's petit jury panel was established and that the state did not rebut it." In reaching its decision in the Stewart case, the Eighth Circuit Court of Appeals, quoting from Bailey v. Henslee, 287 F. 2d 936, said:

" 'Here there appears to be a definite pattern of race selection; here there is a device for race identification with its possibility of abuse; here there is exclusion from the alternate panels * * *; here there is an element of recurrence of the same Negro names; and here there is the additional factor, for what atmosphere it may provide, of exclusion from the civil divisions' panels.' "

None of the elements shown in Bailey or Stewart, supra, are shown in the case at bar. But even so, the Eighth Circuit Court decision, supra, is not all of the Stewart case. Stewart's first conviction was affirmed by this court in Stewart v. State, 233 Ark. 458, 345 S. W. 2d 472, and the district court, on a petition for habeas corpus, found that Stewart had made a prima facie case in denial of his constitutional rights because of systematic and arbitrary exclusion of Negroes from the

petit jury. The decision of the district court was affirmed by the Eighth Circuit Court of Appeals, *Stewart* v. *Henslee*, 311 F. 2d 691, supra, and certiorari was denied December 4, 1961, by the U. S. Supreme Court, *Stewart* v. *State*, 379 U. S. 935, 85 S. Ct. 336, 13 L. Ed. 2d 345.

Stewart was retried in the Pulaski County Circuit Court, he was again convicted and his conviction was again affirmed by this court. *Stewart* v. *State*, 237 Ark. 748, 375 S. W. 2d 804. On his second appeal to this court Stewart again alleged discrimination by the jury commissioners in the selection of the jury panel. In affirming the conviction we distinguished the facts in the first Stewart case from those in the second and Stewart again filed habeas corpus proceedings in the U. S. District Court where he again alleged that his constitutional rights were violated in the selection of the jury that tried him. The case was again remanded for a determination of the voluntariness of Stewart's confession (*Stewart* v. *Stephens*, 244 F. Supp. 982), but on the issue of jury selection, the finding of the district court in the second appearance of the case expresses our own feeling in the case at bar. In *Stewart* v. *Stephens*, supra, at page 989, the district court said:

> "The evidence falls far short of establishing that racial discrimination was practiced in the selection of the jury panel, as petitioner contends. This Court is convinced that his federal right to a jury selected without regard to race was fully preserved at his trial and that his argument to the contrary is without merit."

In the case at bar the only evidence relating to the jury panel was the testimony of Mrs. Barnard that she would estimate that the races were divided about equally in the voter registration list, and the testimony of Mr. McFall that of the 36 jurors on this panel, 8 were Negroes. The *voir dire* testimony does not appear in the record, and we only know from the unchallenged statement of the prosecuting attorney that three of the Negro jurors on this panel were excused through peremptory challenges exercised by the state. There is no evidence

in the record that the appellants exhausted their peremptory challenges at all, and there is nothing in the record to show whether the 4 or 5 Negro jurors remaining on the panel sat on the jury when the appellants were tried. There is no evidence as to whether additional jurors than those on the regular panel were called, or examined, or sat on the jury.

The judgment is affirmed.